## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRANDON THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-01786 (JEB) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, CRIMINAL DIVISION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DECLARATION OF JOHN E. CUNNINGHAM III

I, John E. Cunningham III, declare pursuant to Title 28, United States Code, Section 1746 as follows:

1.      I am a Trial Attorney in the U.S. Department of Justice (DOJ), Criminal Division (CRM), and am currently assigned to the Freedom of Information Act (FOIA) and Privacy Act (PA) Unit, a component of the Office of Enforcement Operations (OEO), where I have worked since November 7, 2011.  I have been employed as a Trial Attorney with DOJ since October 1998.  From October 13, 1998 to November 7, 2011, I was employed by the Fraud Section of the Criminal Division.

2.      I am responsible, among other things, for handling the Criminal Division responses to administrative requests under the FOIA, 5 U.S.C. § 552.  I have the same function with respect to lawsuits filed under the FOIA against the Criminal Division.

3.      I am familiar with the policies and procedures of the Criminal Division for responding to administrative requests and lawsuits filed under the FOIA. I am also familiar with the systems of records of the Criminal Division that are searched in those circumstances.

4.      I have read the complaint in this matter. I have personally reviewed the administrative file and the Criminal Division documents that were collected in response to Plaintiff's FOIA request and this lawsuit. The statements made herein are based upon knowledge I acquired through the performance of my official duties.

Chronology

5.      Brandon Thompson (the Plaintiff) who is currently under indictment in Case No. 13-58, before the U.S. District Court for the Western District of Pennsylvania (Pittsburgh) for One Count of Conspiracy to Distribute and Possess with Intent to Distribute One (1) Kilogram or More of Mixture and Substance Containing a Detectable Amount of Heroin, a Schedule I Controlled Substance From In and Around April 2012, and Continuing Thereafter To In and Around February 2013, in violation of 21 U.S.C. § 846, and One Count of Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Drug Trafficking Crime From On or About August 12, 2012, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii) and (iii), and 2, alleges that by letter dated October, 2, 2013, he submitted a FOIA/PA request to the Criminal Division seeking "a copy of the Title III interception of electronic communication approval letters and all other documents that are a part of the electronic surveillance for the following telephone numbers: (412) 235-8173, (412) 302-5110, (330) 261-4515, (412) 268-0228, (412) 401-6606, (412) 901-8562, (412) 607-0599, (412) 518-1973, (412) 980-7644, (202) 769-7208, (412) 773-3552, (412) 522-3257 and (412) 482-4974." (See ECF 1, ¶ 5, and page 21).

6.     By letter dated October 24, 2013, Plaintiff submitted an appeal to the Director of the Office of Information Policy (OIP), notifying OIP that the Criminal Division had failed to reply to his FOIA/PA request. (See ECF 1, ¶ 4, and page 23).

7.     In response to Plaintiff's appeal, OIP by letter dated November 26, 2013, informed Plaintiff that the Criminal Division had no record of having received a FOIA request from him, nor had he identified any other component of the DOJ from whose action he was appealing. Accordingly, OIP further informed Plaintiff that since there was no action for OIP to consider on appeal, it was, therefore closing his appeal file. A true copy of OIP's letter is attached hereto as Exhibit A.

8.     On June 17, 2014, the Criminal Division received a letter from Plaintiff wherein Plaintiff "request[ed] an authentic Department of Justice ("DOJ") Criminal Division's Office of Enforcement Operations ("OEO") official copy of the Title III authorization/approval memorandums, and all other documents from the Criminal Division that were a part of the approval process[es] for the memorandum(s) for the electronic surveillance for the following telephone number(s) that I have been alleged, by officers of the DOJ to have had my private telephone conversations intercepted, monitored, and/or disclosed over in court proceedings: 412-235-8713, 412-901-8562, 412-607-0599 and 412-773-3552. Also, I request under the Privacy Act, 5 U.S.C. Sec. 552 (a), the Criminal Division search the following indexes for all records, and information containing, pertaining to, and/or involving my name: Justice/CRM-001, Justice/CRM-003 and Justice/CRM-019." The Plaintiff was not the subscriber for any of the afore-referenced telephone numbers. Citing § 16.5(d)(1)(iii), the Plaintiff further requested that the Criminal Division grant expedited treatment of his FOIA/PA request submitting that there

was an exceptional need and urgency for these Title III records. [1]  A true copy of Plaintiff's

request and certification of identity is attached hereto as Exhibit B.

      9.     By letter dated July 14, 2014, Plaintiff filed an appeal with OIP based upon the

Criminal Division's refusal to respond to his FOIA/PA request dated June 7, 2014. (See ECF 1,

¶ 8, and page 41).

      10.    By letter dated July 15, 2014, the Criminal Division acknowledged receipt of

Plaintiff's FOIA/PA request dated June 7, 2014.  The Criminal Division assigned it file number

CRM-300452618.  The Criminal Division further informed Plaintiff that the records he sought

required a search in another section of the Criminal Division, and so his request presented

"unusual circumstances" under the FOIA.  Moreover, because of these unusual circumstances,

the Criminal Division also needed to extend the twenty day time limit to respond to Plaintiff's

request beyond the ten additional days provided by the statute.  Finally, the Criminal Division

noted that the Plaintiff was requesting expedited processing of his FOIA/PA request pursuant to

the Department's standard involving the "loss of substantial due process rights."  The Criminal

Division denied Plaintiff's request for expedited processing based upon the information provided

by Plaintiff and further noted that "[c]ourts are reluctant to grant expedited processing unless a

requester can show (1) 'that [he] is facing grave punishment [in a criminal proceeding], and (2)

that there is reason to believe information will be produced to aid the individual's defense.'

---

[1] 28 C.F.R. § 16.5(d)(1)(i),(ii),(iii) & (iv) address the expedited processing of FOIA requests and
states in relevant part that: "(1) Requests and appeals will be taken out of order and given
expedited treatment whenever it is determined that they involve: (i) Circumstances in which the
lack of expedited treatment could reasonably be expected to pose an imminent threat to the life
or physical safety of an individual; (ii) An urgency to inform the public about an actual or
alleged federal government activity, if made by a person primarily engaged in disseminating
information; (iii) The loss of substantial due process rights; or (iv) A matter of widespread and
exceptional media interest in which there exist possible questions about the government's
integrity which affect public confidence."

Freedman v. United States Department of Justice, No. 92-0557, slip op. at 4 (D.D.C. Oct. 2,

1992)." The Criminal Division also noted that neither of these circumstances were present in the

Plaintiff's case. A true copy of the Criminal Division's letter is attached hereto as Exhibit C.

11.     By letter dated July 24, 2014, Plaintiff filed an appeal with OIP based upon the

Criminal Division's refusal to grant expedited treatment for his FOIA/PA request. Specifically,

on appeal to OIP, Plaintiff asserted that under the district court's standard in Aguilera v. FBI,

941 F. Supp. 144, 150 (D.D.C. 1996), he had clearly met all three requirements needed for

expedited treatment. See § 16.5(d)(1)(ii),(iii) & (iv). Moreover, citing § 16.5(d)(1)(ii), Plaintiff

alleged that he was entitled to expedited treatment under the second standard enumerated in the

DOJ's regulations, in that there clearly appears to be "[a]n urgency to inform the public about

actual, or alleged Federal government activity . . . [in this instant matter], involving what

strongly appears to be racial based and discriminatory policing policies and enforcement

decisions by the DOJ." (See ECF 1, ¶ 10, and pages 44-45, 48).

12.     By letter dated August 14, 2014, OIP informed Plaintiff that with regard to his

July 14, 2014 appeal, and because there had been no adverse determination yet made by the

Criminal Division, there was, no action for OIP to consider on appeal. A true copy of OIP's

letter to the Plaintiff is attached hereto as Exhibit D.

13.     By letter dated September 17, 2014, OIP informed Plaintiff that the Criminal

Division had properly denied Plaintiff's request for expedited treatment of his FOIA request.

Specifically, OIP informed Plaintiff that OIP was responsible for making determinations

regarding whether the first three standards for establishing whether a FOIA request was entitled

to expedited processing had been met, while the Department's Director of Public Affairs made

determinations regarding the fourth standard. See § 16.5(d)(2). OIP noted that under the second

standard, Plaintiff had not established that the records were a matter of current exigency to the

American public, nor that delaying a response would compromise a significant recognized

interest. Further, OIP determined that Plaintiff had not demonstrated that he was "primarily

engaged" in disseminating information. Moreover, and without such a showing, OIP concluded

that expedited processing pursuant to the second standard was not warranted. With regard to the

third standard, OIP noted that the courts have held that requests for expedited treatment for due

process reasons generally should not be granted unless a requester shows that he is "facing grave

punishment" in a pending criminal proceeding and that "there is a reason to believe that the

information produced will aid in the individual's defense." Aguilera v. FBI, 941 F. Supp. 144,

150 (D.D.C. 1996). Based upon information submitted by the Plaintiff, OIP determined that

while it is possible that he may be facing grave punishment, Plaintiff had failed to demonstrate

that the information he sought would aid in any criminal defense. OIP noted that while Plaintiff

asserted that the information sought could assist in his criminal defense, Plaintiff however, had

provided no evidence or credible reason to believe that the information sought would be of such

assistance. Accordingly, OIP determined that the Criminal Division properly denied Plaintiff's

request for expedited treatment under the third standard. Next, OIP informed Plaintiff that it was

in agreement with the Director of Public Affairs who submitted that expedited treatment of

Plaintiff's request under the fourth standard was not warranted because Plaintiff had failed to

sufficiently demonstrate that the subject of his request was "[a] matter of widespread and

exceptional media interest in which there exist possible questions about the government's

integrity which affect public confidence." See § 16.5(d)(1)(iv). Finally, OIP concluded that

Plaintiff's allegations of racial bias had no evidentiary support, and accordingly, agreed with the

Director of Public Affairs who properly determined that Plaintiff had failed to meet his burden

for expedited processing.  A true copy of OIP's letter to the Plaintiff is attached hereto as Exhibit E.

14.     On October 23, 2014, Plaintiff filed this lawsuit seeking an order directing the defendant to disclose the records requested in his June, 7, 2014 FOIA/PA request.  Plaintiff alleged that he is a defendant in the criminal case described above in paragraph 5 and that on March 14, 2013 at his arraignment he became aware of evidence derived from Title III wire intercepted communications that involved or pertained to Plaintiff.  (See ECF 1, ¶ 2).

The Search for Responsive Documents

15.     There were two sources of records in the Criminal Division where documents responsive to Plaintiff's FOIA request were likely to be located: (1) an OEO database used to track federal prosecutors' requests for permission to apply for court-authorization to surreptitiously intercept conversations of person allegedly involved in criminal activity under Title III (the "Title III request tracking system"); and (2) archived emails of Criminal Division employees that are maintained by its IT department.  The Criminal Division searched both of these sources for documents responsive to Plaintiff's FOIA request.

16.     The Search of the Title III Request Tracking System.  The Criminal Division searched OEO's Title III request tracking system for references to the telephone numbers that Plaintiff identified in his June 7, 2014 FOIA request, and the name "Brandon Thompson."  The Title III request tracking system is the Criminal Division's only official information management system for Title III applications submitted to OEO by federal prosecutors across the U.S.

17.     By way of background, Title III provides that, when U.S. law enforcement wishes to obtain court authorization to surreptitiously intercept the oral communications of the subject of a criminal investigation pursuant to Title III, a prosecutor must first obtain permission from

7

the appropriate DOJ official, which includes the Assistant Attorney General for the Criminal

Division (AAG) and his/her deputies. 18 U.S.C. §§ 2516(1), 2518(1)(A). Under internal DOJ

procedures, the prosecutor must submit the request to OEO's Electronic Surveillance Unit

(ESU), which reviews the request to ensure that it complies with Title III. The request to ESU

must include a law enforcement agent's affidavit, the prosecutor's application to the Court, and a

proposed order.

18.     When ESU receives a prosecutor's request, an administrative staff member logs it

into the Title III request tracking system, and an ESU attorney is assigned to review the request.

The ESU attorney will discuss the request with the prosecutor (via telephone or email), including

any changes necessary before the request can be approved. Once the paperwork has been

finalized, the ESU attorney drafts an action memorandum to the AAG for the Criminal Division

summarizing and analyzing the relevant facts, discussing whether the prosecutor's request meets

the requirements of Title III, and setting forth OEO's recommendation whether the request

should be approved. The action memorandum is then sent to the AAG's office for final review

and authorization of the prosecutor's request.

19.     If the prosecutor's request is approved, the AAG's office prepares a memorandum

to OEO so stating. That memorandum, together with the Attorney General's delegation order, is

provided to the prosecutor, who files it under seal with the Court, together with the Title III

application, agent's affidavit, and proposed orders.

20.     The Title III request tracking system contains information from 1983 to the

present. The data is entered into the system via the following fields: date of request; type of

interception requested (e.g., cellular phone, landline, or email); where a phone is involved, the

phone number; requesting AUSA; investigative agency that will handle the interceptions; and the

date the request was approved or rejected.   The system also allows users to upload documents such as prosecutors' applications, agents' affidavits, proposed court orders, and action memorandums.   Keyword searches may be conducted of the data fields using a search parameter, such as the subject's name or a phone number.   In this case, the "facility" field was searched for the telephone numbers listed above in paragraph 8, and the "subject" field was searched for the name "Brandon Thompson."

21.    The Search for Emails.   The Criminal Division utilizes Microsoft Outlook as its email application.   Email messages (as well as any attachments) sent or received by Criminal Division employees are archived in "Enterprise Vault," a file and email archiving program created by Symantec that has the ability to archive from Microsoft Outlook.   All emails more than 30 days old are automatically archived in Enterprise Vault.   The Criminal Division's Enterprise Vault contains emails dating back to 2009.

22.    The Criminal Division's email system is administered by its Information Technology Management (ITM) staff, which is also responsible for searching the Division's email archives in response to data requests like Plaintiff's.   Enterprise Vault enables ITM to searches the archives using the name of the email's custodian, keywords, and date ranges, among other things.

23.    By reviewing records in the Title III tracking system database and consulting with the ESU, the FOIA/PA unit confirmed the identities of the attorneys who reviewed the request to do the wiretappings at issue in this case (the "ESU reviewers") and the AUSA who made the requests and the time period during which these attorneys were in communication with each other.   In or about January 2015, ITM searched the email account of the ESU reviewers for emails between those attorneys and the AUSA.   With regard to the following phone numbers:

(412) 235-8713, (412) 607-0599 and (412) 773-3552, the search covered all emails exchanged

between the ESU reviewers and the prosecutor during the time frame of August 1, 2012 to

March 31, 2012.  With regard to phone number: (412) 901-8562, the search covered all emails

exchanged between the ESU reviewer and the prosecutor during the time frame of October 1,

2012 to January 31, 2013.  This was the entire time period of communications between the ESU

reviewers and the AUSA concerning the Title III authorizations that are at issue to this case, and

these individuals would have had no reason to be communicating with each other about the

authorizations outside of these periods.  The search of the ESU reviewers email accounts were

conducted by inputting the name of the prosecutors and limiting the query to the specified

August 1, 2012 to March 31, 2013, and October 1, 2012 to January 31, 2013 time periods.  ITM

was not asked to search for emails between the ESU reviewers and his or her supervisors

concerning the subject matter of Plaintiff's request.  This is because, during consultations with

the ESU reviewers and an ESU supervisor, it was confirmed that any relevant communications

between these individuals would have taken place in person or via telephone.

24.     In summary, the Criminal Division searched the two records systems that would

contain information responsive to Plaintiff's request.  Its search was conducted in good faith, and

was reasonable and complete.

25.     Attached hereto as Exhibit F is a *Vaughn* index cataloguing the responsive

documents located through the search described above.  The index identifies the FOIA

exemptions pursuant to which responsive records were withheld; describes the nature of the

withheld document; identifies the document's author or origin; describes the content of the

document; and specifies the basis for the invoked exemption[s].  Attached hereto as Exhibit G is

a table listing the types of responsive documents and the corresponding FOIA exemptions invoked.

## PRIVACY ACT EXEMPTION (j)(2)

26.     Title 5 U.S.C. § 552a(j)(2) provides, in pertinent part, that the head of a law enforcement agency may promulgate rules to exempt records systems containing information compiled for purposes of a criminal investigation.  The Title III request tracking database contains records related to criminal investigations conducted by U.S. law enforcement.  This system of records has been exempted from various requirements of the Privacy Act as permitted by Exemption (j)(2).  See 5 U.S.C. § 552a(j)(2)(C); 28 C.F.R. § 16.91(m) (2013) (exempting system of records containing requests to the Attorney General to approve applications to federal judges for electronic interceptions); 52 Fed. Reg. 47198-99 (1978) (same).

27.     The Criminal Division is a DOJ component that is responsible for the enforcement of federal criminal laws.  One of the investigative tools it uses is the court-authorized interception of oral communications pursuant to 18 U.S.C. § 2518.  As a result, the information and records sought by Plaintiff are records related to criminal law enforcement investigations within the meaning of 5 U.S.C. § 552a(j)(2) and are therefore exempt from the Privacy Act's access provisions.  Plaintiff's request was therefore processed under the FOIA.

## FOIA EXEMPTIONS

### FOIA EXEMPTION (b)(3) AND THE NON-DISCLOSURE PROVISIONS OF TITLE III

28.     The Criminal Division is withholding the following documents pursuant to FOIA Exemption (b)(3), based upon the non-disclosure provisions of Title III of the Organized Crime Control Act of 1968:

a)      Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders.

- The applications seek authorization to intercept the wire communications of Target Subjects over specified telephones for 30 days. They identify the telephone numbers, the name of the Target Subjects and their predicate crimes, the name and address of the telephone subscriber, and the name of the AUSA.

- The affidavits summarize the evidence gathered to date from prior Title III intercepts and explain why the application complies with Title III. Filed under seal as part of the application, they include the name and address of the telephone subscriber, the names of the Target Interceptees, the names of the individuals whose conversations have already been intercepted, and incriminating excerpts of those conversations.

- Proposed court orders authorizing law enforcement to intercept communications of Target Subjects over specified telephones for 30 days. They identify the names of the Target Interceptees, and the predicate criminal offenses, the name and address of the phone subscriber.

- Proposed court orders to service provider drafted by AUSAs as part of the request to OEO for permission to apply for a Title III order concerning specified telephone numbers. These orders direct the mobile phone service provider for the phone to provide law enforcement with information, facilities and technical assistance necessary to conduct the authorized interceptions for 30 days. They identify the name and address of the phone subscriber and the phone's electronic serial number.

b)      Action memorandums from OEO to the AAG recommending approval of prosecutors' requests. These memorandums summarize the evidence gathered to date from prior Title III intercepts and analyze and explain how the referenced agent's affidavit demonstrates that the USAO's request complies with Title III. They include the target telephone numbers, the name of the subject of the investigation, the name of the ESU reviewer, the names of the individuals whose conversations have already been intercepted, and incriminating excerpts of those conversations.

12

c)      Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG. The memorandums are filed under seal as part of the application.

29.      Exemption (b)(3) allows the withholding of information prohibited from disclosure by another federal statute where the statute either: (a) leaves no discretion on the issue; or (b) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  Title III contains two non-disclosure provisions that are relevant to this case: 18 U.S.C. §§ 2518(8)(b) and 2517.  Section 2518(8)(b) governs the disclosure of documents concerning the authorization of wiretapping, whereas § 2517 concerns information about the resulting interceptions.

18 U.S.C. § 2518(8)(b)

30.      Title 18 U.S.C. § 2518(8)(b) qualifies as a non-disclosure statute under both prongs of Exemption (b)(3).  Section 2518(8)(b) provides in pertinent part that, "Applications made and orders granted under this chapter shall be sealed by the judge. ... Such applications and orders shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction ..."  Once a document is sealed by the Court pursuant to this provision, defendants herein have no discretion to disclose the document, thereby bringing § 2518(8)(b) under the first prong of Exemption (b)(3).  Section 2518(8)(b) also fits within Exemption (b)(3)'s second prong, because it "refers to particular matters to be withheld," *i.e.*, the documents generated in the Title III authorization process.

31.      Section 2518(8)(b) prohibits disclosure of the applications, affidavits, orders and authorization memorandums listed above in paragraph 28(a), (b) and (c).  These documents are of the type identified in the statute.  Although the agents' affidavits and the authorization

memorandums are not separately listed in § 2518(8)(b), they are part of the application submitted to the Court. The statute requires these documents to be sealed, and it was confirmed with the AUSA who is prosecuting Plaintiff that the sealing order entered by the Court pursuant to 18 U.S.C. § 2518(8)(B) prohibits disclosure of the documents to the general public. Defendants herein thus have no discretion to disclose them without an unsealing order. Moreover, because these documents contain the very information § 2518(8)(b) seeks to protect, their production in this lawsuit would result in the disclosure of exempted information and would thereby negate the intent of the statute.

<u>18 U.S.C. § 2517</u>

32.     Title 18 U.S.C. § 2517, which restricts the disclosure of the contents of wiretapped communications, also applies to this case. That provision permits such communications to be disclosed in three circumstances only: (1) by one law enforcement officer to another in the line of official duty; (2) by a law enforcement officer "to the extent such use is appropriate to the proper performance of his official duties"; and (3) by any person while giving testimony under oath. 18 U.S.C. § 2517(1)-(3). Because the affidavits and memorandums referenced above in paragraph 28 and summarize or describe the contents of court-authorized interceptions, their disclosure is governed by § 2517. Production of such information in a FOIA lawsuit is not among the disclosures permitted by § 2517.

<u>FOIA EXEMPTION (b)(5): ATTORNEY WORK PRODUCT PRIVILEGE</u>

33.     The Criminal Division is withholding the following documents pursuant to FOIA Exemption (b)(5) because they are exempt from disclosure pursuant to Exemption (b)(5), the attorney work product privilege:

14

a)      Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;

b)      OEO Title III System Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers.  They include the name of the subject of the investigation, the name and address of the subscriber of the telephone service, the name of the ESU reviewer, and the user name of the ESU employee who created the Logging Note.

c)      Email messages from ESU to AUSA's acknowledging receipt of the AUSA's Title III application.  These messages identify the names of the Target Subject, the AUSA, and the ESU reviewer;

d)      Email messages between the prosecutor making the request and the ESU reviewer, in which the attorneys discuss the ESU review process, edits, revisions, etc.

e)      Action memorandums from OEO to the AAG recommending approval of prosecutors' requests;

f)      Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and

g)      Letters signed by Deputy AAGs on behalf of the AAG to a U.S. Attorney advising that the prosecutor's request to apply for a Title III order had been approved.  The letters identify the name and address of the telephone subscriber and the names of the Target Subjects.

This list encompasses all of the documents Plaintiff is seeking in this suit.

34.     Exemption (b)(5) protects intra-agency memorandums or letters which would not be available by law to a party in litigation with the agency.  This exemption incorporates all civil discovery privileges, including the work product privilege.  This privilege protects material prepared by, or at the direction of, an attorney in anticipation of litigation, including a criminal prosecution.

35.     Each of the documents listed in paragraph 28 above was prepared by an attorney who was acting at the behest of a client (the U.S. Government) or someone acting at the direction of such an attorney.  These documents were created as part of the wiretap application process, and were therefore created in anticipation of litigation, *i.e.*, a criminal prosecution of the individuals allegedly involved in the criminal activity that was evidenced by the court-ordered interceptions.  With regard to the Government's Title III application and the agent's affidavit of which it is a part, they are used to establish the existence of probable cause, that less intrusive investigative methods have been exhausted or would be futile, and other important statutory requirements that must be met to ensure that the resulting intercepts may be admissible.

FOIA EXEMPTION (b)(5) -- THE DELIBERATIVE PROCESS PRIVILEGE

36.     The Criminal Division is withholding the following documents pursuant to FOIA Exemption (b)(5), the deliberative process privilege, because they reflect the Criminal Division's deliberative processes:

    a)     Agent affidavits in support of Title III applications;

    b)     Action memorandums from OEO to the AAG recommending approval of prosecutors' Title III requests; and

    c)     Email messages between the prosecutor making the request and the ESU attorney reviewers, in which the attorneys discuss the ESU review process, edits, revisions, etc.

37.     The deliberative process privilege covers documents reflecting advisory opinions, recommendations and deliberations comprising a part of a process by which governmental decisions and policies are formulated.  To fall under the deliberative process privilege, a communication must be both predecisional and part of the deliberative process.

38.     The agent affidavits summarize and analyze the relevant facts and explain why the request meets the requirements of Title III.  The action memorandums summarize and analyze the relevant facts, discuss whether the request meets the requirements of Title III, and set forth OEO's recommendation whether the request should be approved.  The email messages between the AUSA and the ESU attorneys reflect the give-and-take of thoughts and recommendations that was part of the decision-making process about whether to approve the AUSA's request.  These documents are covered by the Criminal Division's deliberative process privilege because they were: (1) created before the making of an official decision, *i.e.*, whether to approve a prosecutor's request for permission to apply for a Title III order; (2) a direct part of the decision-making process, in that they reflect analysis, recommendations, opinions, and deliberations that were central to the official decision-making process; and (3) submitted by a decision-maker's subordinate to a decision-maker pursuant to a process that is required by Title III and internal Criminal Division policy.

## FOIA EXEMPTION (b)(7)(C) – PERSONAL INFORMATION IN LAW ENFORCEMENT RECORDS

39.     The Criminal Division is withholding third-party information in the records listed below pursuant to FOIA Exemption (b)(7)(C) because the records were compiled for law enforcement purposes and disclosure of that information could reasonably be expected to constitute an unwarranted invasion of personal privacy:

a)     Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;

b)     OEO Title III System Logging Notes;

c)     Email messages from ESU to AUSA's acknowledging receipt of the AUSA's Title III application;

d)     Email messages between the prosecutor making the Title III request and the ESU reviewers, in which the attorneys discuss the ESU review process, edits, revisions, etc.;

e)     Action memorandums from OEO to the AAG recommending approval of prosecutors' requests;

f)     Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and

g)     Letters signed by Deputy AAGs of the AAG to a U.S. Attorney advising that the prosecutor's Title III request has been approved.  The letters identify the name and address of the telephone subscribers and the names of the Target Subjects.

40.     Exemption (b)(7)(C) protects personal information in criminal law enforcement records whose disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Individuals – whether targets, suspects, or witnesses – have a strong interest in not being unfairly associated publicly with alleged criminal activity.  The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to harassment or criticism.  Similarly, public identification of law enforcement personnel, prosecutors, and the non-

supervisory officials involved in the Criminal Division's internal review process could subject them to harassment both in the conduct of their official duties and their private lives. Accordingly, the Criminal Division has recognized that these individuals also have a substantial privacy interest in avoiding disclosure of their personal information in the requested documents.

41.     The FOIA requires that, once a substantial privacy interest has been identified, it must be balanced against the magnitude of any recognized public interest that would be served by the disclosure. Plaintiff has not identified any such interest, and the Criminal Division is not aware of any. The proper focus of the balancing process is the nature of the requested documents and their relationship to the statutory purpose to open agency action to the light of public scrutiny. Disclosure of the personal information described above would not shed light on the performance of the Criminal Division's statutory duties. Plaintiff's private need for the information in his criminal prosecution is not relevant to the balancing process. Accordingly, the Criminal Division concluded that, on balance, the individuals' privacy interests substantially outweighed any purported public interest in the disclosure of the information.

FOIA EXEMPTION (b)(6) – PERSONAL INFORMATION ABOUT THIRD PARTIES

42.     The Criminal Division is also withholding information in the records listed in paragraph 39 above because the disclosure of that information would constitute a clearly unwarranted invasion of the personal privacy of individuals. FOIA Exemption (b)(6) protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." As a threshold matter, the Criminal Division records containing the protected information constitute "similar files" within the meaning of Exemption (b)(6) because they

pertain to particular individuals, *i.e.*, the law enforcement personnel and private persons involved in the wiretapping and the Criminal Division's internal review process.

43.     As explained in paragraph 41 above concerning the balancing process, there is no substantial public interest in the disclosure of the information Plaintiff is seeking.  As a result, there is no public interest to be balanced against the important privacy interests of individuals.  Accordingly, public access to personal information about the individuals described above would violate their substantial interest in controlling information concerning their persons.

44.     I have reviewed each page of the material deemed responsive to Plaintiff's request to determine whether there was any non-exempt information that could be reasonably segregated and released.  I have determined that there is no segregable non-exempt information.  The attached *Vaughn* index, *see* Exhibit F, describes the relevant information in each responsive record and the basis for the invoked exemptions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 10TH day of February 2015.

John E. Cunningham III
Trial Attorney