**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**BRANDON THOMPSON,**

**Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF
JUSTICE, CRIMINAL DIVISION,** *et al.*,

**Defendants.**

Civil Action No.  14-1786 (JEB)

**MEMORANDUM OPINION**

This case is the fourth in a series of *pro se* Freedom of Information Act suits brought by a group of criminal defendants awaiting trial on drug-conspiracy and related charges in the Western District of Pennsylvania.  See Gilliam v. Dep't of Justice, No. 14-36, 2015 WL 5158728 (D.D.C. Sept. 1, 2015); Wright v. Dep't of Justice, No. 14-272, 2015 WL 4910502 (D.D.C. Aug. 17, 2015); Ellis v. Dep't of Justice, No. 13-2056, 2015 WL 3855587 (D.D.C. June 22, 2015).  In all four cases, the plaintiffs filed FOIA and Privacy Act requests with the Criminal Division of the Department of Justice for information related to court-authorized wiretap surveillance that they believe intercepted their communications.  "Not coincidentally, all [four] cases raise almost identical claims and arguments under FOIA" – indeed, the incarcerated plaintiffs appear to have borrowed liberally from one another's briefs in these matters.  Gilliam, 2015 WL 5158728, at *1. Defendants in this case have also apparently deemed it appropriate to cut corners in their submissions to the Court.  Notwithstanding the shortcomings in the parties' materials and "the substantial overlap among these cases, this court has an independent obligation to consider the

1

merits of the case before it." Id.  Having done so, it will grant Defendants' Motion for Summary Judgment.

## I.  Background

Plaintiff was indicted in the Western District of Pennsylvania on one count of conspiracy to distribute heroin and one count of using a firearm in furtherance of a drug-trafficking crime. See MSJ, Attach. 3 (Declaration of John E. Cunningham III), ¶ 5.  As far as the Court knows, that case is currently pending.  Apparently dissatisfied with the discovery furnished by the U.S. Attorney's Office there, Thompson now seeks to use FOIA and the Privacy Act to access information he believes was obtained as a result of wiretap surveillance of his personal communications.  Such wiretaps are authorized by Title III of the Omnibus Crime Control and Safe Streets Act of 1968.  See 18 U.S.C. §§ 2510-2520.

Plaintiff's initial FOIA request, a letter addressed to Kenneth Counter at the Criminal Division of DOJ and dated October 2, 2013, "request[ed] a copy of the Title III interception of electronic communication approval letters and all other documents that are a part of the electronic surveillance for the following telephone number[s]: (412) 235-8173[,] (412) 302-5110[,] (330) 261-4515[,] (412) 268-0228[,] (412) 401-6606[,] (412) 901-8562[,] (412) 607-0599[,] (412) 518-1973[,] (412) 980-7644[,] (202) 769-7208[,] (412) 773-3552[,] (412) 522-3257[,] (412) 482-4974."  Compl., Exh. B (First FOIA Request).  On October 24, 2013, Thompson sent a second letter, this time to the Director of DOJ's Office of Information Policy. See id., Exh. C (First Appeal Letter to OIP).  He sought "to appeal the non-reply of the DOJ Office of Enforcement Operations to a FOIA request [he] sent to this agency via U.S. Certified Mail" and noted that FOIA requires agencies to respond to requests for information within twenty days.  Id.

OIP acknowledged receipt of Thompson's administrative appeal in a letter dated November 1, 2013.  Id., Exh. D (11/1/13 OIP Letter to Thompson).  Twenty-five days later, OIP informed Thompson that under DOJ regulations, a party can bring an administrative appeal regarding a FOIA request "only after there has been an adverse determination by an identified component," and that "[t]he Criminal Division has no record of having received a FOIA request from [him]."  Id., Exh. E (11/26/13 OIP Letter to Thompson) (citing 28 C.F.R. § 16.9(a)(2013)).  The letter stated that because there was "no action for this Office to consider on appeal," Thompson's appeal file would be closed.  Id.

On June 17, 2014, the Criminal Division received a letter from Thompson requesting that its Office of Enforcement Operations disclose its "official copy of the Title III authorization/approval memorandums, and all other documents from the Criminal Division that were a part of the approval process . . . for the electronic surveillance for the following telephone number(s) that I have been alleged, by officers of the DOJ to have had my private telephone conversations intercepted, monitored, and/or disclosed over in court proceedings: 412-235-8713, 412-901-8562, 412-607-0559, 412-773-3552."  MSJ, Exh. B (Second FOIA Request) at 1.  Plaintiff additionally requested "that under the Privacy Act . . . the Criminal Division search the following indexes for all records, and information containing, pertaining to, and/or involving my name:  Justice/CRM-001, Justice/CRM-003, Justice/CRM-019."  Id.  He further sought expedited review of those requests due to his "exceptional need and urgency for these Title III requested records . . . as any delay could result in substantial lose [*sic*] of due process rights for the requester in criminal no. 13-58."  Id. at 2.

On July 14, 2014 – more than a month later – having heard nothing from the agency, Plaintiff sent a letter to OIP appealing the Criminal Division's refusal to respond to his Second

FOIA Request, filed in June.  See Compl., Exh. G (7/14/14 Appeal to OIP).  Meanwhile, the

Criminal Division sent Plaintiff a letter acknowledging receipt of his June FOIA/PA request; the

Court presumes that the two letters must have been in transit simultaneously.  See Compl., Exh.

H (7/15/14 Criminal Division Acknowledgment Letter) at 1.  In its letter, the Division notified

Thompson that it would require more than the additional ten days beyond the twenty-day

response window provided by FOIA to process his request, and that his request for expedited

processing had been denied.  Id.

Apparently having received the Criminal Division's acknowledgement of his Second

FOIA Request, Plaintiff appealed the denial of his request for expedited processing by letter

dated July 24, 2014.  See Compl., Exh. I (7/24/14 Appeal to OIP) at 1.  He argued, again, that his

request qualified for such rapid treatment under various criteria set forth in 28 C.F.R. §

16.5(d)(1).  See id.

Around that time, OIP acknowledged receipt of Thompson's July 14 administrative

appeal, in which he had challenged the failure of the Criminal Division to respond to his Second

FOIA Request.  See Compl., Exh. K (7/25/14 OIP Acknowledgement Letter).  A few weeks

later, OIP denied the July 14 appeal, stating that because "no adverse determination has yet been

made by the Criminal Division, there is no action for this Office to consider on appeal."  MSJ,

Exh. D (8/14/14 OIP Letter to Thompson).  OIP assured Plaintiff, however, that it had contacted

the Criminal Division and learned that his request "is currently being processed."  Id.

Next, by letter dated September 17, 2014, OIP denied Thompson's July 24 appeal from

the Criminal Division's denial of his request for expedited processing.  See MSJ, Exh. E (9/17/14

OIP Letter to Thompson) at 1.  OIP determined that Thompson's FOIA request did not satisfy

any of the asserted bases for expedited treatment pursuant to 28 C.F.R. § 16.5(d)(1):  Plaintiff

4

had not demonstrated "urgency to inform the public about an actual or alleged Federal

Government activity"; a "loss of substantial due process rights"; or a "widespread and

exceptional media interest" in the subject matter requested due to "possible questions about the

government's integrity that affect public confidence."  Id. § 16.5(d)(1)(ii)-(iv).

On October 23, 2014, acting *pro se*, Plaintiff filed this lawsuit, asking the Court to order

the Criminal Division to expeditiously process his FOIA request and disclose the responsive

documents, to award him costs and attorney fees, and to award damages based on the Criminal

Division's wrongdoing in this FOIA matter and in Thompson's criminal proceedings generally.

See Compl., ¶¶ A-K.

Having processed Plaintiff's request, Defendants now move for summary judgment.

They assert, first, that they performed adequate searches for materials responsive to Thompson's

request and, second, that they were entitled to invoke Privacy Act Exemption (j)(2) and FOIA

Exemptions 5, 6, and 7(C) to withhold from release all responsive records.  See MSJ at 2.

Plaintiff disagrees, contending that the search was inadequate, and the invocation of these

various exemptions was improper.  See Opp. at 10.  Because the Court concludes – as did the

courts in Ellis, Wright, and Gilliam – that the searches here were reasonable and complete, and

that Defendants properly invoked Privacy Act Exemption (j)(2) and FOIA Exemption 5 in

withholding all responsive documents, it will grant their Motion.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

        FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a

court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)

(citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).  "Unlike the review of other agency action that must be upheld if

supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the

burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter

6

de novo.'"  U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749,

755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361

(1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to

the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for

records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . .  shall make the records promptly available to any person," 5 U.S.C.

§ 552(a)(3)(A), unless the records fall within one of nine narrowly construed exemptions.  See 5

U.S.C. § 552(b); Rose, 425 U.S. at 361.  Consistent with this statutory mandate, federal courts

possess jurisdiction to order the production of records that an agency improperly withholds.  See

5 U.S.C. § 552(a)(4)(B); Reporters Comm. for Freedom of the Press, 489 U.S. at 755.

The Court's inquiry begins with the adequacy of Defendants' search for documents

responsive to Plaintiff's request and proceeds to the applicability of the statutory exemptions

Defendants believe justify their withholding of those documents.  The Court will then address

whether Defendants were obliged to segregate any non-exempt materials, whether they

submitted a satisfactory Vaughn Index, and other ancillary issues.

### A.   Adequacy of the Search

The adequacy of an agency's search for documents under FOIA "is judged by a standard

of reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. Dep't

of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The "adequacy of a FOIA search is generally

determined not by the fruits of the search, but by the appropriateness of the methods used to

carry out the search."  Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir.

2003); see also Weisberg, 745 F.2d at 1485 ("[T]he issue to be resolved is not whether there

might exist any other documents possibly responsive to the request, but rather whether the search

for those documents was adequate.").

  "An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-

Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of

State, 897 F.2d 540, 542 (D.C. Cir. 1990)).  To meet its burden, the agency should submit

affidavits or declarations that explain the scope and method of its search "in reasonable detail."

Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  If the record "leaves substantial doubt as to

the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d

at 542.

  To justify the adequacy of their search here, Defendants rely on the Declaration of John

E. Cunningham, III, a trial attorney with the Criminal Division of DOJ.  See Cunningham Decl.,

¶ 1.  He explains that "[t]here were two sources of records in the Criminal Division where

documents responsive to Plaintiff's FOIA request were likely to be located" – namely, the

database used to track federal prosecutors' requests for court-authorized wiretaps ("Title III

request tracking system") and the archived emails of Criminal Division employees.  See id., ¶ 15.

He avers that the Division searched the Title III request-tracking system – the "only official

information management system for Title III applications" of federal prosecutors – for

"references to the telephone numbers that Plaintiff identified in his June 7, 2014 FOIA request,

and the name 'Brandon Thompson.'" Id., ¶ 16.  This search allowed the Division to identify the

attorneys who reviewed the wiretap requests in Plaintiff's case, which, in turn, allowed the

Division to search their archived emails for communications between those attorneys and the

Assistant U.S. Attorney.  Id., ¶ 23.  The Division searched for emails exchanged during "the

entire time period of communications . . . concerning the Title III authorizations that are at issue

to this case," and Cunningham notes that "these individuals have no reason to be communicating

with each other about the authorizations outside of these periods."  Id.

   In opposing summary judgment on this issue, Plaintiff contends that the "limited

contrived search . . . is inadequate and not sufficient."  Opp. at 7.  The Court, however, finds this

contention unpersuasive.  The D.C. Circuit has directed that "[t]here is no requirement that an

agency search every record system" it maintains, but, at the same time, "the agency cannot limit

its search to only one record system if there are others that are likely to turn up the information

requested."  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  So long as the

agency submits "[a] reasonably detailed affidavit, setting forth the search terms and the type of

search performed, and averring that all files likely to contain responsive materials (if such

records exist) were searched," the district court can "determine . . . the search was adequate in

order to grant summary judgment."  Id.  In this case, the agency demonstrated the adequacy of its

search via Cunningham's Declaration.  He specifically states that "the Criminal Division

searched the two records systems that would contain information responsive to Plaintiff's

request.  Its search was conducted in good faith, and was reasonable and complete."

Cunningham Decl., ¶ 24 (emphasis added).  Such a statement satisfies the agency's justificatory

obligations.

Of course, "[i]f the requester produces countervailing evidence placing the sufficiency of the identification or retrieval procedures genuinely in issue, summary judgment is inappropriate." <u>Penny v. U.S. Dep't of Justice</u>, 712 F. Supp. 2d 18, 20-21 (D.D.C. 2010) (citing <u>Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency</u>, 610 F.2d 824, 836 (D.C. Cir. 1979)).  But because Plaintiff offers no evidence indicating that another record system or search term might have yielded additional responsive materials, he has proffered no basis on which to challenge the reasonableness or thoroughness of this search.  <u>Cf.</u> <u>Ellis</u>, 2015 WL 3855587, at *3-5 (affirming adequacy of nearly identical search for documents in Title III record-tracking system and Criminal Division's archived emails, in response to substantially similar FOIA request).

As a last-ditch attempt to challenge the adequacy of the search here, Plaintiff also argues that DOJ did not comply with the Privacy Act.  This argument, too, is unavailing; "[I]f he did want the agency to conduct a Privacy Act 'search' [based on the same request], any such search would be coextensive with the search it carried out in responding to his FOIA request . . . [because] the adequacy of the search for both FOIA and Privacy Act requests is analyzed under the same standard."  <u>Ellis</u>, 2015 WL 3855587, at *5 (citing <u>Chambers v. U.S. Dep't of Interior</u>, 568 F.3d 998, 1003 (D.C. Cir. 2009)).  The Court, accordingly, concludes that the search here was adequate.

### B.  <u>Privacy Act Exemption (j)(2) and FOIA Exemption 5</u>

As previously mentioned, although the Criminal Division's search yielded a number of responsive documents – categorized in Defendants' <u>Vaughn</u> Index, <u>see</u> MSJ, Exh. F – the Division withheld all of them as exempt under Privacy Act Exemption (j)(2) and FOIA Exemptions 3, 5, 6, and 7(C).  The Court considers exemptions under both Acts because when a

plaintiff requests documents under both FOIA and the Privacy Act, the agency "must demonstrate that the documents fall within some exemption under each Act." Martin v. Office of Spec. Couns., Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987).

####    1.   *Privacy Act Exemption (j)(2)*

The Privacy Act provides that "[e]ach agency that maintains a system of records shall . . . [,] upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him."  5 U.S.C. § 552a(d)(1).  At the same time, like FOIA, the Privacy Act exempts some classes of materials from this broad disclosure requirement.  Exemption (j)(2) "protects documents that are maintained by law-enforcement agencies for criminal investigations and that contain personal identifying information." Cavezza v. Dep't of Justice, No. 15-182, 2015 WL 4148706, at *3 (D.D.C. July 9, 2015).  Plaintiff's only challenge to the invocation of this exemption is to argue that it does not permit the agency to limit its search for materials responsive to his request. See Opp. at 10-13.  But the Court has already deemed the agency's Privacy Act search adequate, and so this argument falls flat. See Section III.A, *supra*.

The agency, moreover, properly invoked Exemption (j)(2) in this matter.  That exemption (j)(2)

> applies, in relevant part, to records that are: (1) stored in a system of records that has been designated by an agency to be exempt from the Privacy Act's disclosure requirements; and (2) stored in a system that is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws," and that consists of "information compiled for the purpose of a criminal investigation."

Barouch v. Dep't of Justice, 87 F. Supp. 3d 10, 31 (D.D.C. 2015) (quoting 5 U.S.C. §

552a(j)(2)(A)). Defendants contend that the Title III records-tracking system and the Criminal

Division email archive "both . . . contain records related to criminal investigations conducted by

U.S. law enforcement" and have been "exempted from the access provision of the Privacy Act."

MSJ at 5. Although it is obvious that both the records-tracking system and email archive satisfy

the first requirement, the second requirement is slightly trickier. In fact, only the records-

tracking system has been explicitly exempted from the Privacy Act. See 28 C.F.R. § 16.91(m)

(exempting from Privacy Act disclosure "Requests to the Attorney General For Approval of

Applications to Federal Judges For Electronic Interceptions System of Records").

      The email database is a closer call, because no agency regulations expressly identify it as

exempt under the Act's (j)(2) provision. Nevertheless, at least one court in this district has found

that the Criminal Division's email archive is not a "system of records" that would be covered by

the access provisions of the Privacy Act in the first place. Gordon, 2015 WL 4602588, at *9; see

also Mobley v. CIA, 924 F. Supp. 2d 24, 55-56 (D.D.C. 2013) (concluding that "database of e-

mail messages" was not a "Privacy Act system of records"); 5 U.S.C. § 552a(a)(5) (defining

"system of records" as "a group of any records under the control of any agency from which

information is retrieved by the name of the individual [i.e., the requester] or by some identifying

number, symbol, or other identifying particular assigned to the individual"). Following Gordon,

the Court concludes that the agency's email archive is not a "system of records" subject to the

access provisions of the Privacy Act, so a statutory exemption is not required. The agency was

thus under no obligation under the Privacy Act to disclose any responsive materials identified in

either the Title III records-tracking system or the Criminal Division's email archive.

2.   *FOIA Exemption 5*

By way of reminder, the Criminal Division invoked four FOIA exemptions in justifying

its refusal to disclose materials responsive to Plaintiff's request.  Because the Court finds that the

agency properly invoked Exemption 5 in withholding all of the responsive materials, however, it

need only address that one exemption.  See, e.g., Simon v. Dep't of Justice, 980 F.2d 782, 785

(D.C. Cir. 1992) (affirming withholding of records based on one FOIA exemption and declining

to address any other).

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency."  5

U.S.C. § 552(b)(5).  In other words, under Exemption 5, an agency may withhold "documents[]

normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S.

132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984).

Exemption 5 encompasses three distinct components: attorney-work-product privilege,

deliberative-process privilege (sometimes called "executive privilege"), and attorney-client

privilege.  See Am. Immigr. Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216

(D.D.C. 2012).  The Civil Division here relies on the first two components.  Determining that the

first is properly invoked and covers all withheld documents, the Court will grant summary

judgment on that basis.

"The attorney work-product [prong of Exemption 5] protects 'documents and tangible

things that are prepared in anticipation of litigation or for trial' by an attorney."  Id. at 221

(quoting Fed. R. Civ. P. 26(b)(3)).  As this Court has noted in the past, the work-product

privilege is relatively broad, encompassing documents prepared for litigation that is

"foreseeable" even if not necessarily imminent.  See id.  The privilege, however, is not

boundless.  No doubt potential future litigation "touches virtually any object of a [law-enforcement-agency] attorney's attention," but "if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would largely be defeated."  <u>Senate of Puerto Rico v. Dep't of Justice</u>, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (internal quotation marks omitted).

When reviewing a withholding under the work-product prong of Exemption 5, the D.C. Circuit employs a because-of test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  <u>FTC v. Boehringer Ingelheim Pharms. Inc.</u>, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting <u>United States v. Deloitte LLP</u>, 610 F.3d 129, 137 (D.C. Cir. 2010)).  Where a document would have been created "in substantially similar form" regardless of the litigation, work-product protection is not available.  <u>See</u> <u>Deloitte</u>, 610 F.3d at 138 (quoting <u>United States v. Adlman</u>, 134 F.3d 1194, 1195 (2d Cir. 1998)).

This means that the Government must at least demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable. . . . The testing question for the work-product privilege, [the D.C. Circuit] ha[s] held, is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  <u>In re Sealed Case</u>, 146 F.3d 881, 884 (D.C. Cir. 1998). For the government to discharge its evidentiary burden under this test, it generally must provide a description of the contents of the withheld document – which typically includes the document's author and the circumstances surrounding its creation – and provide some indication of the type

of litigation for which the document's use is at least foreseeable.  See Ellis, 2015 WL 3855587,

at *6.

 The Criminal Division here withheld the following seven categories of documents

pursuant to the attorney-work-product exemption, which it asserts "encompasses all of the

documents Plaintiff is seeking in this suit":

- Prosecutors' requests for permission to apply for court authorization to intercept wire communications, including applications, affidavits of law-enforcement agents, and proposed court orders;
- Office of Enforcement Operations (OEO) Title III Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers – including the name of the subject of the investigation, the name and address of the subscriber of the telephone service, the name of the Electronic Surveillance Unit (ESU) reviewer, and the user name of the ESU employee who created the Logging Note;
- Email messages from ESU reviewers to AUSAs acknowledging receipt of the Title III application, which identify the names of the target subject, the AUSA, and the ESU reviewer;
- Email messages between the prosecutor making the request and the ESU reviewer, in which the attorneys discuss the ESU review process, edits, revisions, etc.;
- Action memorandums from OEO to the Assistant Attorney General (AAG) recommending approval of prosecutors' requests;
- Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and
- Letters signed by Deputy AAGs on behalf of the AAG to a U.S. Attorney advising that the prosecutor's request to apply for a Title III order has been approved, which identify the name and address of the telephone subscriber and names of the Target Subjects.

MSJ at 12-13; see also id., Exh. G ("Table of Responsive Records and Exemptions Invoked")

(identifying "5 (work product)" as basis for exempting from disclosure all identified records).

 The agency's detailed explanations in both its declaration and Vaughn Index of the

reasons why these documents were withheld clearly suffice.  See Cunningham Decl., ¶ 35; MSJ,

Exh. F (Vaughn Index).  First, the entries in the Vaughn Index describe the nature and contents

of the withheld documents.  See, e.g., Vaughn Index at 2 ("ESU Title III Request.  Email

message from an AUSA to the ESU automated system requesting permission to apply for a Title

III order concerning tel. nos. 412-235-8713 and 412-302-5110."). Second, the Index identifies the documents' origins. See, e.g., id. ("This document was prepared by a government attorney as part of the wiretap application process . . . ."). Third, it notes the investigative circumstances around their creation. See, e.g., id. ("It is accompanied by drafts of the application, affidavit, proposed orders, and a[] . . . cover sheet."). Finally, it indicates the foreseeable criminal prosecution for which the documents were created. See, e.g., id. (document was "created in anticipation of litigation, i.e., a criminal prosecution of the individuals allegedly involved in the criminal activity that was evidenced by the court-ordered interceptions").

These types of documents, in short, are classic attorney work product, the disclosure of which would risk putting DOJ lawyers' thought processes and strategy on public display. The records include research and analysis, as well as recommendations about possible courses of action, created in preparation for criminal prosecution. See, e.g., SafeCard Servs., Inc., 926 F.2d at 1203 ("[W]here an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product."); Government Accountability Project v. Dep't of Justice, 852 F. Supp. 2d 14, 24-26 (D.D.C. 2012) (DOJ properly withheld communications between a Criminal Division attorney and her supervisor relating to whether DOJ should pursue prosecution); Wolfson v. United States, 672 F. Supp. 2d 20, 27-30 (D.D.C. 2009) (memoranda prepared by Criminal Division attorneys "in anticipation of a criminal prosecution" recommending that authorization be granted to apply for Title III order was properly withheld under attorney-work-product privilege because release would reveal attorneys' thought processes); Durrani v. Dep't of Justice, 607 F. Supp. 2d 77, 84 (D.D.C. 2009) (email between attorneys, drafts of indictments, and prosecutorial memorandum

covered by privilege); <u>Miller v. U.S. Dep't of Justice</u>, 562 F. Supp. 2d 82, 114-15 (D.D.C. 2008)

(DOJ properly withheld documents "reflect[ing] such matters as trial preparation, trial strategy,

interpretation, personal evaluations and opinions pertinent to" the defendant's criminal case); <u>cf.</u>

<u>Rockwell Int'l Corp. v. Dep't of Justice</u>, 235 F.3d 598, 605 (D.C. Cir. 2001) (parties stipulated

that DOJ memoranda prepared in anticipation of criminal prosecution covered by privilege).

Indeed, other courts in this district, faced with virtually identical facts, recently reached the same

conclusion.  <u>See</u> <u>Gilliam</u>, 2015 WL 5158728, at *4-5; <u>Ellis</u>, 2015 WL 3855587, at *6-7; <u>see also</u>

<u>Dorsey v. Drug Enforcement Admin.</u>, 85 F. Supp. 3d 211, 217-18 (D.D.C. 2015) (DOJ Title III

wiretap-application memoranda were covered by attorney-work-product privilege in Exemption

5).

      Certain withheld records are not as obvious, however.  The second and third categories of

documents listed above, while undeniably part of an attorney's work product, possess a partially

administrative character.  These documents include system logging notes indicating that OEO

has received a request from a prosecutor for permission to apply for a Title III order and emails

from ESU attorneys to AUSAs acknowledging receipt of Title III applications.  Because these

quasi-administrative records were compiled in anticipation of a specific criminal prosecution and

are not generic agency records maintained for some conceivable future litigation, this Court joins

several other courts in this District that have held that the work-product privilege protects them.

<u>See</u> <u>White v. Dep't of Justice</u>, 952 F. Supp. 2d 213, 219 (D.D.C. 2013) (forms used by attorneys

to track and describe the status of investigation in anticipation of prosecution); <u>Soghoian v. Dep't</u>

<u>of Justice</u>, 885 F. Supp. 2d 62, 73 (D.D.C. 2012) ("The availability of the privilege is even

clearer where documents relate to specific litigation."); <u>Geronimo v. Executive Office of U.S.</u>

<u>Attorneys</u>, No. 05-1057, 2006 WL 1992625, at *4 (D.D.C. July 14, 2006) (research and

memoranda compiled by AUSA covered by privilege); see also Ellis, 2015 WL 3855587, at *6. The Court thus agrees that even these partially administrative records may be properly withheld here.

Plaintiff devotes significant space in his Opposition to challenging the applicability of the deliberative-process prong of Exemption 5 but pays little heed to Defendants' invocation of the work-product prong. Thompson's only potentially salient response here is that the government-misconduct exception vitiates the work-product privilege. See Opp. at 23-27. As an initial matter, however, this exception has only been applied to the deliberative-process privilege covered by Exemption 5. See, e.g., Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 66-68 (D.D.C. 2012). Even assuming the exception did apply to the work-product privilege, it is construed very narrowly and only in cases of extreme government wrongdoing. See id.; see also Neighborhood Assistance Corp. of Am., v. Dep't of Hous. & Urban Dev., 19 F. Supp. 3d 1, 14 (D.D.C. 2013) (collecting cases that "recognize a similarly high benchmark [of] . . . nefarious or extreme government wrongdoing").

Thompson's only specific allegation offered to clear this steep hurdle is that "the defendants and the W.D. Pa. AUSAO are engaged in a civil conspiracy to conceal, and/or cover-up the alleged unlawful and/or unreported wiretapping of the plaintiff and African-American persons only in the W.D. Pa." Opp. at 25. But he offers no evidence substantiating his allegation that the U.S. Attorney's Office for the Western District of Pennsylvania only intercepts the electronic communications of black citizens, beyond identifying a handful of additional "civil actions . . . filed by African-American plaintiffs who have been investigated, electronically surveilled, and indicted" subsequently. Id. at 24-25, 29-38. Because assertions of government misconduct are easy to allege and hard to disprove, "[t]he party seeking release of

withheld documents under this exception must provide an adequate basis for believing that the documents would shed light upon government misconduct."  National Whistleblower Center, 903 F. Supp. 2d at 67 (quotation marks, alterations, and citation omitted).  Plaintiff's assembly of a handful of cases alleging that black individuals were wiretapped hardly supplies such an "adequate basis" – especially when at least two of the cases cited, Ellis and Gilliam, are related to this case.

On this record, the government-misconduct exemption is clearly inapplicable.  Accord Gilliam, 2015 WL 5158728, at *5 ("The court is unpersuaded by Plaintiff's effort to pierce these [Exemption 5] privileges by asserting that DOJ has engaged in race discrimination in its seeking of intercepts in the Western District of Pennsylvania."); Wright, 2015 WL 4910502, at *11 (same).  The Court, consequently, concludes that the attorney-work-product prong of Exemption 5 properly covers the seven categories of responsive materials identified by the Criminal Division in processing Plaintiff's FOIA request.  The agency was justified in withholding those documents.

### 3.  Segregability

In addition to challenging the applicability of the FOIA exemptions invoked by the Criminal Division, Plaintiff takes issue with the agency's refusal to segregate any non-exempt materials.  See Opp. at 22-23.  Typically, where exemptions are properly invoked, "FOIA expressly requires agencies to extract '[a]ny reasonably segregable portion of a record' and provide it to the requesting party 'after deletion of the portions which are exempt.'"  Soghoian, 885 F. Supp. 2d at 75 (quoting 5 U.S.C. § 552(b)).  But "[i]n the FOIA context, [i]f a document is fully protected as a work product, then segregability is not required."  Ellis, 2015 WL 3855587, at *7 (quoting Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 336, 371 (D.C. Cir.

2005)); see also Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997) ("Any part of a [document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5."). A segregability analysis is thus not required in this case, where the Court has deemed all responsive materials properly exempt from FOIA's disclosure requirements under the attorney-work-product protection prescribed by Exemption 5.

C.  Additional Issues

Plaintiff raises a couple of other ancillary issues in his Opposition.  For instance, he believes that Defendants' Vaughn Index is insufficiently specific or detailed, and he asserts that "cell-site simulator warrants" referenced therein are illegal.  See Opp. at 40-44.  The latter issue, which is neither raised in Plaintiff's Complaint nor set forth clearly in the Opposition, and certainly not in relation to the government-misconduct exception, is not properly before this Court.  In any event, any such complaint does not arise under either FOIA or the Privacy Act, and Plaintiff does not state a claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999).

With regard to the specificity of the Vaughn Index, the D.C. Circuit has explained that "[a]ny measure will adequately aid a court if it 'provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply.'"  Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006) (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)).  The Court finds that Defendants' Vaughn Index is sufficiently specific to identify the responsive documents uncovered in their search and justify withholding them from disclosure, as discussed in Section

III.B.2, *supra*.  Although the Index does not list "unique email document ID numbers[,] . . .

unique sequenced serial page numbers, [or] any names of the 'ESU attorneys,' 'FBI Agents,' or

'AUSA(s),' who allegedly sent and/or received these specific email[s]," as Plaintiff desires, <u>see</u>

Opp. at 42, the Court must be mindful that the agency "has the difficult obligation to justify its

actions without compromising its original withholdings by disclosing too much information,"

and that "[t]he <u>Vaughn</u> Index provides a way for the defending agency to do just that."  <u>See</u>

<u>Judicial Watch, Inc.</u>, 449 F.3d at 146.  The Court, here, is persuaded that the Criminal Division

has struck the right balance between these competing concerns in its <u>Vaughn</u> Index.

  Finally, although the government has prevailed here, the Court would be remiss if it did

not observe a couple of Defendants' shortcomings.  First, as noted in the introduction to this

Opinion, any casual reader would discern an unusual degree of overlap between this case and

<u>Ellis</u>, <u>Wright</u>, and <u>Gilliam</u>.  As the government is the Defendant in each, and as each case was

filed in this district, it seems rather surprising that the government never brought these strikingly

similar cases to the Court's attention.  <u>Cf.</u> <u>Gilliam</u>, 2015 WL 5158728, at *1 n.1 (admonishing

the government for failing to draw the court's attention to the relatedness of <u>Wright</u> and <u>Ellis</u> –

"even if not technically 'related' under the court's rules – to conserve judicial resources").

  In addition, the substantial overlap in these cases does not excuse Defendants' decision to

copy and paste fifteen full pages from its Motion into its Reply.  To be sure, a reply brief is not

required under our Local Rules.  <u>See</u> LCvR 7(d) ("[M]oving party <u>may</u> serve and file a reply

memorandum.") (emphasis added).  To the extent that any moving party does choose to avail

itself of the option of filing a reply, though, it would do well to use such brief to aid the Court in

its decisionmaking process, rather than wasting its time with redundant and non-responsive

argumentation.  In this case, Plaintiff's *pro se* Opposition raised a number of issues that, in the

Court's view, merited specific rejoinders from Defendants.  Fortunately for Defendants, notwithstanding their failure to respond meaningfully, the Court was able to determine, based on the evidence presented and the analysis stated herein, that they are entitled to judgment as a matter of law.  The Court trusts that Defendants – who are repeat players in these types of FOIA matters – will endeavor to present it with more useful submissions in the future.

## IV.      Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.  A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 19, 2015